UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| KENNETH RAYMOND FORGA, | | |
| | Petitioner, | No. 3:18-cv-05079-BHS-TLF |
| v. | | **REPORT AND RECOMMENDATION** |
| RONALD HAYNES, | | **Noted for: July 20, 2018** |
| | Respondent. | |

Petitioner Kenneth Raymond Forga was convicted by jury verdict of two counts of delivery of methamphetamine within 1,000 feet of a school bus route stop, one count of possession of methamphetamine with intent to deliver, and one count of unlawful possession of morphine. Dkt. 11, Respondent's Submission of Relevant State Court Record, Exhibit 1. Although Mr. Forga appears to ask, in his 28 U.S.C. § 2254 petition, that the Court vacate all of his convictions, he challenges the validity of his conviction only with respect to the count of methamphetamine possession with intent to deliver. Dkt. 5, p. 3. Mr. Forga contends that this conviction resulted from a violation his Sixth and Fourteenth Amendment right to effective counsel. Dkt. 4.

Mr. Forga has not shown that the last reasoned decision of the state court was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or that those decisions were based on an unreasonable

REPORT AND RECOMMENDATION - 1

determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1), (2). Accordingly, the undersigned recommends that the Court deny the petition and dismiss the action with prejudice and without an evidentiary hearing. The undersigned also recommends that the Court deny a certificate of appealability.

**STATEMENT OF FACTS**

The Washington Court of Appeals, Division II, summarized the facts underlying Mr. Forga's conviction as follows:

> Debbie Miesbauer contacted Cowlitz–Wahkiakum Narcotics Task Force Detective Phillip Thoma, expressing a desire to be a confidential informant (CI). Pursuant to her agreement with Detective Thoma, Miesbauer would be paid $20 for every controlled buy and was to refrain from using drugs. Miesbauer admitted at trial that she had used methamphetamine during the time of the agreement, but there was no argument made, nor evidence to suggest, that she was under the influence during the controlled buys.
>
> Kenneth Forga was targeted by the task force as a potential dealer of methamphetamine. Detective Thoma set up controlled buys with Miesbauer from Forga on June 28, 2013 and July 2, 2013. On June 28, Detective Thoma searched Miesbauer for any drugs or money, noted she did not appear to be high, gave her $80 to buy methamphetamine, and watched her walk to Forga's trailer residence. Miesbauer returned with methamphetamine and stated she had purchased it from Forga. On July 2, Detective Thoma again searched Miesbauer for money and drugs, but this time gave Miesbauer $50. Miesbauer again returned from Forga's residence with methamphetamine, and told Detective Thoma she had purchased it from Forga.
>
> After the second controlled buy, Detective Thoma wrote a search warrant application for the residence where Miesbauer purchased the methamphetamine.
>
> . . .
>
> During the search of the trailer pursuant to the warrant, the police found two tablets of hydrocodone, several small plastic baggies with methamphetamine residue, two baggies containing 0.2 grams of methamphetamine, two morphine tablets, a spoon, a straw, several unused baggies, and a digital scale with methamphetamine residue on it. The police also found a cigar box containing several small baggies of methamphetamine, a food stamp card with Forga's name on it, and a pay/owe sheet listing narcotics sales. No money was found in the

REPORT AND RECOMMENDATION - 2

> trailer, and the money found on Forga did not match the money used in the controlled buys.
>
> While the police were searching the trailer, a cell phone on the coffee table rang. A detective answered, and the caller asked if he could stop by. The caller indicated that he wanted a "20," which the detective knew meant $20 worth of methamphetamine. VRP at 247. The detective asked if the caller wanted "crystal" or "white," which are street names for methamphetamine, and the caller said that is what he wanted. VRP at 247. When the caller arrived approximately five minutes later, the caller was arrested.
>
> Forga was charged with two counts of delivery of methamphetamine within 1,000 feet of a school bus route stop, one count of possession of methamphetamine with intent to deliver, one count of unlawful possession of hydrocodone, and one count of unlawful possession of morphine. A two day jury trial was held; Forga stipulated to the location of his trailer being within 1,000 feet of a school bus route stop. The jury returned guilty verdicts on all charges except the unlawful possession of hydrocodone.

Exhibit 3, pp. 2-4.

On appeal, the Washington Court of Appeals affirmed the convictions. Exhibit 3; Exhibits 4-6 (appellate briefs). Mr. Forga did not seek review by the Washington Supreme Court. The Washington Court of Appeals issued its mandate on September 14, 2015. Exhibit 7.

Mr. Forga then filed a personal restraint petition (PRP) in the Washington Court of Appeals. Exhibits 8, 9. The Washington Court of Appeals denied the PRP. Exhibit 11, Unpublished Opinion, No. 48472-2-II; *see* Exhibit 12, 13 (Motion for Reconsideration and denial). Mr. Forga sought review by the Washington Supreme Court. Exhibit 14. The Commissioner of the Washington Supreme Court denied review. Exhibit 15. Mr. Forga moved to modify the Commissioner's ruling. Exhibit. 16. The Washington Supreme Court denied the motion to modify on October 4, 2017. Exhibit 17. The Washington Court of Appeals issued a certificate of finality on October 10, 2017. Exhibit 18.

Mr. Forga filed a proposed petition for writ of habeas corpus on January 29, 2018. Dkt. 1.

REPORT AND RECOMMENDATION - 3

## STANDARD OF REVIEW

A federal court may grant a habeas corpus petition with respect to any claim that was adjudicated on the merits in state court only if the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

A state court ruling is contrary to clearly established federal law if the state court either arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be an unreasonable application of Supreme Court precedent, the state court's decision must be "more than incorrect or erroneous." *Cooks v. Newland*, 395 F.3d 1077, 1080 (9th Cir. 2005). Rather, it must be objectively unreasonable. *Lockyear v. Andrade*, 538 U.S. 63, 69 (2003).

This is a "'highly deferential standard'" that "'demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). If "'fairminded jurists could disagree' on the correctness of the state court's decision," this Court cannot grant habeas relief. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 662, 664 (2004)). In short, "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102 (quoting

REPORT AND RECOMMENDATION - 4

*Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

In determining whether a state court decision was based on an unreasonable determination of the facts in light of the evidence, a federal habeas court must presume that state court factual findings are correct. 28 U.S.C. § 2254(e)(1). A federal court may not overturn state court findings of fact "absent clear and convincing evidence" that they are "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). When applying these standards, a federal habeas court reviews the "last reasoned decision by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the last state-court decision does not explain its reasoning, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and, subject to rebuttal, "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018)

**EXHAUSTION**

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion thus may not be implied or inferred. A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. *Picard v. Connor*, 404 U.S. 270, 276 (1971); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985).

Here, the State concedes that Mr. Forga raised his ineffective assistance of counsel claim during state-court proceedings. The State thus explicitly waives any argument that Mr. Forga failed to exhaust these claims. Dkt. 9, p. 5.

REPORT AND RECOMMENDATION - 5

**DISCUSSION**

Mr. Forga contends that he received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments when his trial counsel failed to raise an objection under the Fourth Amendment to an officer's testimony that the officer picked up Mr. Forga's cell phone and impersonated Mr. Forga in setting up a drug deal.

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003). To show that this right was denied, a defendant must show both that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To satisfy the first of these prongs, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Courts apply a "strong presumption" that the performance of counsel "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel has "wide latitude in deciding how best to represent a criminal defendant" and "in making tactical decisions." *Strickland*, 466 U.S. at 688-89. Courts evaluate "[t]he reasonableness of counsel's performance . . . from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 384 (1986).

Under the second prong, the defendant must "affirmatively prove prejudice" in the form of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94. In weighing prejudice, a reviewing court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695.

The primary question when reviewing a claim of ineffective assistance of counsel under

REPORT AND RECOMMENDATION - 6

the Anti-Terrorism and Effective Death Penalty Act (AEDPA) is not whether counsel's representation was deficient or the state court erred in its analysis, but whether the state court adjudication *itself* was unreasonable. *Yarborough*, 540 U.S. at 5. Review of counsel's representation is thus "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough*, 540 U.S. at 5-6.

*First Prong: Deficient Performance*

As discussed below, in its decision the Supreme Court of Washington reasonably found that Mr. Forga was not prejudiced even if his counsel's performance was deficient. Accordingly, the Court does not need to decide the deficient-performance issue, including the question of whether an officer impersonating a suspect in answering a suspect's phone (and in using it to call the person back) violates the suspect's Fourth Amendment rights, where the officer has a warrant to search the phone.

If the Court does reach this issue, it should look to the decision of Division Two of the Washington State Court of Appeals denying Mr. Forga's personal restraint petition. Dkt. 11. Because the Washington Supreme Court did not address this issue in declining to review Mr. Forga's personal restraint petition, *see* Exhibit 15, Division Two made the last reasoned decision of the state courts on the deficient-performance prong.

Division Two held that the performance of Mr. Forga's trial counsel was not deficient in failing to raise a Fourth Amendment challenge to the cellphone conversation:

> Police may search a cellular telephone covered by a valid search warrant. *State v. Samalia*, 186 Wn.2d 262, 272, 375 P.3d 1082 (2016). Forga provides no legal authority to support his argument that the privacy act excludes the contents of a cellular telephone searched pursuant to a valid warrant. Nor has Forga shown that the search warrant was invalid. The search warrant in this case authorized the seizure and inspection of Forga's cellular telephone and its contents. Hence, the police officer executing the search warrant was authorized to not only seize Forga's cellular telephone, but also examine it. *Id*. Therefore, any information

REPORT AND RECOMMENDATION - 7

gathered from the cellular telephone, including the conversation the officer had with the third party, was covered under the search warrant.

Exhibit 11, p. 3. The court concluded that a motion to suppress therefore would have been unsuccessful. *Id.*, p. 3. Accordingly, it held that Mr. Forga's counsel did not perform deficiently in failing to bring such a motion. *Id.*

The State has not, as Mr. Forga asserts, conceded that Mr. Forga's trial counsel's performance was deficient. *See* Dkt. 5, p. 4. The State litigated this issue below and won a decision in the Court of Appeals that Mr. Forga's counsel's performance was not deficient. Exhibit 11, p. 3. In this habeas proceeding, the State again argues that Mr. Forga's counsel's performance was not deficient. Dkt. 9, pp. 11-13.

If the Court reaches the deficient-performance prong, it should apply the habeas standard of review under AEDPA. Mr. Forga contends that the Court should review his deficient performance claim de novo, because the Court of Appeals rejected his deficient-performance claim based on its interpretation of the state privacy act rather than the Fourth Amendment. *See* Exhibit 11, p. 3; *see also Rompilla v. Beard*, 545 U.S. 374, 390 (2005); *Murdoch v. Castro*, 609 F.3d 983, 1000–01 (9th Cir. 2010) (Kozinski, J., dissenting) ("The Supreme Court has held that when a state court declines to reach an issue because it erroneously concludes it need not, our review is de novo."). This argument misconstrues the Court of Appeals' holding. The Court did hold that no violation of the state privacy act occurred in admitting evidence of the officer's phone call. But the Court of Appeals also held that the warrant to search Mr. Forga's phone applied to the officer's conversation using that phone. Exhibit 11, p. 3 ("[A]ny information gathered from the cellular telephone, including the conversation the officer had with the third party, was covered under the search warrant."). The Fourth Amendment generally does not prohibit searches conducted pursuant to a valid warrant. *Schneckloth v. Bustamonte*, 412 U.S.

REPORT AND RECOMMENDATION - 8

218, 276 (1973) (Brennan, J., dissenting). Accordingly, the state court's discussion shows that it considered and rejected Mr. Forga's Fourth Amendment claim.

Applying the AEDPA standard of review, the Court should conclude that no Supreme Court precedent "clearly establishe[s]" that a search warrant applying to the "contents" of a suspect's phone does *not* apply to an officer's use of the phone to impersonate the suspect. As noted above, reviewing courts must apply "a strong presumption" that defense counsel acted reasonably in his trial tactics, and this Court's habeas review is "doubly deferential." *Strickland*, 466 U.S. at 689; *Yarborough*, 540 U.S. at 5-6. Mr. Forga cites no precedent establishing a rule prohibiting the officer's phone conversation in this case, and the undersigned is aware of none. Thus, the Court of Appeals' decision was not contrary to or an unreasonable application of established federal law as determined by the United States Supreme Court. Mr. Forga's ineffective assistance claim must fail at the first prong.

*Second Prong: Prejudice*

Unlike the Washington Court of Appeals, the Supreme Court of Washington avoided deciding "whether a warrant that authorizes an officer to examine the contents of a phone allows the officer to use the seized phone as a means of communicating incognito with suspected drug traffickers." Exhibit 15, p. 3. The Supreme Court found it "debatable" whether counsel is deficient in failing to object to evidence gleaned in such communications. *Id.*

The court found, instead, that "even if counsel was deficient on this point, it is uncertain whether the trial court would have granted a suppression motion." The court held that in any case, such a deficiency did not prejudice the defendant because "even if the phone conversation had been excluded, other properly admitted evidence of drug trafficking was so overwhelming

REPORT AND RECOMMENDATION - 9

that there is no reasonable probability the jury would have acquitted Mr. Forga of possession with intent to deliver." *Id.*

The court listed the evidence that it found "overwhelming:" "a box containing several prepackaged baggies of methamphetamine, about 60 other baggies containing methamphetamine residue, about 100 clean empty baggies, a digital scale with methamphetamine reside on it, and a 'pay/owe' sheet documenting illicit narcotics transactions in drug trade terminology." *Id.* The court concluded, "Mr. Forga thus cannot establish prejudice even if defense counsel was deficient." *Id.*

The Washington Supreme Court's decision was based on a reasonable view of the facts. *See* 28 U.S.C. § 2254(d)(2); *Williams*, 529 U.S. at 386 (2000).

The jury instructions listed the elements of the crime of possession with intent to deliver:

One, that on or about July 10th, 2013, the Defendant possessed a controlled substance, to wit, methamphetamine. [Two, t]hat the Defendant possessed the substance, methamphetamine, with the intent to deliver and three, that this act occurred in the State of Washington.

Verbatim Report of Proceedings, Exhibit 19, at 269. The instructions defined "[d]eliver or delivery" as "the actual or constructive transfer of a controlled substance from one person to another." VRP 266.

The State presented abundant evidence by which the jury could find each of these elements satisfied. Detective Phillip Thoma testified about the items he found at Mr. Forga's home on July 10, 2013: a black zippered pouch with small plastic baggies, some with methamphetamine residue on them; and a digital scale with methamphetamine residue on it. VRP 112-16. Detective James Hansberry testified that the same day at Mr. Forga's home he found a cigar box containing "[s]everal baggies of crystal methamphetamine" and 50 or 60 baggies with residue in them. VRP 176-79. Detective Thoma testified that he also found a black

REPORT AND RECOMMENDATION - 10

pouch containing a straw and a spoon, both with residue on them, and more baggies with residue. VRP 182-83. Detective Thoma testified that based on his experience it is not common to find clean baggies in possession of a person who is not dealing drugs, since "there would be no reason for them to have" clean baggies. VRP 113. He also testified that although he has found scales in the possession of people who use drugs but do not sell them, he has found them much more frequently when the person sells drugs. VRP 113. Detective Hansberry testified that he has commonly found spoons or straws when investigating drug dealing. VRP 183.

Officer Brian Streissguth further testified that he found in Mr. Forga's home a "pay/owe sheet" listing names next to what the officer interpreted as prices and quantities of drugs. VRP 248-49. And he testified that a visitor at Mr. Forga's home, Bobby Jimenez, had $20 worth of methamphetamine on his person, which apparently coincided with an entry on the sheet marked "Bobby" and "20." VRP 242-44, 248.

In closing arguments, counsel for the State listed all of this evidence before mentioning the phone call on which Mr. Forga bases this challenge. VRP 277-80. The prosecutor recounted, also, the testimony of a confidential informant that methamphetamine users do not put drugs directly on a scale, as methamphetamine dealers do, and asked the jury to infer that residue on the scale was evidence of Mr. Forga's intent to deliver. VRP 283.

As noted above, the Supreme Court of Washington found that this "evidence of drug trafficking was so overwhelming that there is no reasonable probability the jury would have acquitted Mr. Forga of possession with intent to deliver." Exhibit 15, p. 3. Applying the deferential standard of habeas review, the undersigned concludes that this holding was not contrary to or an unreasonable application of clearly established federal law, nor was it based on

REPORT AND RECOMMENDATION - 11

an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Accordingly, Mr. Forga's petition must be denied.

## EVIDENTIARY HEARING

Mr. Forga requests an evidentiary hearing for the first time in his reply brief. Dkt. 13, p. 2; *see* Dkt. 4, 5 (petition and accompanying memo did not request a hearing). Assuming that Mr. Forga has properly raised this issue, the Court should find that AEDPA precludes any new evidence at this stage.

In deciding under AEDPA whether this Court can consider evidence that was not presented to the state courts, different rules apply depending on whether the state courts adjudicated the particular claim on the merits.

Where, as here, the state courts adjudicated the claim on the merits, this Court's "review is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (applying 28 U.S.C. § 2254(d)(1)). This rule "effectively precludes federal evidentiary hearings" in determining whether the state court's decision was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1). *Gulbrandson v. Ryan*, 738 F.3d 976, 993-94 (9th Cir. 2013). If the petitioner satisfies § 2254(d)(1) based solely on the state court record, then the habeas court may consider newly presented evidence in reviewing the claim de novo. *Crittenden v. Chappell*, 804 F.3d 998, 1010 (9th Cir. 2015)

Here, Mr. Forga appears to seek a hearing to further argue that the state courts misconstrued Officer Streissguth's testimony. In particular, he points out that the officer testified that he picked up Mr. Forga's phone when it rang, spoke to the caller, and hung up, then used the phone to call the person back and ask what the caller wanted. VRP 247. Mr. Forga points out that

REPORT AND RECOMMENDATION - 12

the summary of facts in the state court decisions appeared to elide the fact that Officer Streissguth not only answered the phone and impersonated Mr. Forga but used the phone to call the person back. *See* Exhibit 11, pp. 2-3.

Because the state court adjudicated Mr. Forga's ineffective assistance claims on the merits, § 2254(d)(1) "effectively precludes" an evidentiary hearing in federal court unless Mr. Forga first shows, based on the state court record, that the state court's decision was contrary to or an unreasonable application of federal law. *See Gulbrandson*, 738 F.3d at 993 (citing *Pinholster*, 563 U.S. at 181). As discussed above, Mr. Forga has not shown that the state court's rejection of his ineffective assistance claim met this standard. The Court should therefore deny Mr. Forga's request to introduce new evidence.

## CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief may appeal a district court's dismissal of his § 2254 motion only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). Mr. Forga is not entitled to a COA because he has not shown that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). Mr. Forga should address whether a COA should be issued in his written objections, if any, to this Report and Recommendation.

## CONCLUSION

Based on the foregoing, the Court recommends that Mr. Forga's habeas petition be **denied and his claims dismissed with prejudice.**

REPORT AND RECOMMENDATION - 13

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **July 20, 2018**, as noted in the caption.

Dated this 29th day of July, 2018.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14